## J. M. COLLARD, Respondent, v. ANTON FRIED, Appellant.

(170 N. W. 525.)

Share cropper contract — action under — by cropper — for conversion — seasonably instituted — plaintiff entitled to highest market value of grain — between dates of conversion and verdict.

1. In an action brought by a share cropper for the conversion of his share of grain raised upon land belonging to the defendant, the action having been seasonably brought and diligently prosecuted, it is held that the plaintiff is entitled to the highest market value of the property between the date of the conversion and the verdict.

Conveyance — fraudulent as to creditors of vendor — action to set aside — employment of counsel by defendant therein — in defense of his title — expenses of suit — cannot counterclaim same in subsequent suit.

2. Where a defendant had found it necessary to employ counsel to defend a conveyance made by the plaintiff to the defendant against the charge that such conveyance was fraudulent as to creditors of the plaintiff, he is not entitled, in a subsequent suit, to establish as a counterclaim the amount paid in defense of the suit.

Previous litigation — in which plaintiff and defendant were parties defendant — account between them — litigated and determined — becomes res judicata — cannot subsequently be counterclaimed.

3. Where, in previous litigation to which plaintiff and defendant were parties defendant, an account existing between them was litigated and formed the basis for determining the amount owing by one to the other, the account is *res judicata* and cannot subsequently be made the basis of a counterclaim.

Jury — instructions of court — where law of case is covered — not error to refuse requested instructions.

4. Where instructions given to the jury fairly cover the law applicable to the case, it is not error to refuse to give instructions requested.

Assignments of error.

5. Other assignments of error examined and held to be without merit.

On Petition for Rehearing.

Affirmance of judgment — conditions.

6. It appearing that evidence in support of a counterclaim was improperly excluded, the affirmance of the judgment is conditioned upon a confession of judgment by the plaintiff for the amount involved in the counterclaim and in favor of the defendant. Otherwise, a new trial is ordered.

Opinion filed November 18, 1918. Rehearing denied January 9, 1919.

Appeal from the District Court of Barnes County, *J. A. Coffey*, J. Affirmed.

*Knauf & Knauf*, for appellant.

Where a party is asked the question, "Did you comply with your contract," a mere legal conclusion is involved and asked, and is objectionable on such ground and as incompetent, and the objection should have been sustained. Bristol & Sweet v. Skapple & Montgomery, 17 N. D. 271; American Soda Fountain Co. v. Hogue, 17 N. D. 375; Norris v. Equitable Fire Asso. 19 S. D. 114, 102 N. W. 306; Wyckoff

v. Kerr, 123 N. W. 735; Graham v. Pennsylvania Co. 12 L.R.A. 293 and note.

. A grantor is required to protect and defend the title he conveys to his grantee under a warranty deed containing the usual covenants, and in an action to set aside such conveyances as fraudulent as to grantor's creditors, where the grantor defaults and the grantee alone is compelled to defend, in a subsequent action between him and his grantor, he may counterclaim his reasonable and necessary expenses in such former suit. Comp. Laws 1913, § 5959; Brooks v. Mohl, 104 Minn. 404, 17 L.R.A.(N.S.) 1195, 116 N. W. 931, and cases cited; Bowne v. Walcott, 1 N. D. 415.

It is the duty of the trial court to charge the jury on all material law points involved in the case, and his failure to do so is error. Comp. Laws 1913, § 7620; Moline Plow Co. v. Gilbert, 3 Dak. 229, 15 N. W. 1.

Parties make their own contracts, and so long as they are lawful it is merely the duty of the court to construe them. Angell v. Egger, 6 N. D. 391, 71 N. W. 547; Bidwood v. Monarch Elev. Co. 9 N. D. 627, 84 N. W. 561; Hawk v. Konouski, 10 N. D. 37, 64 N. W. 563; Van Gorder v. Goldmer, 16 N. D. 323, 113 N. W. 609; Aronson v. Oppegard, 16 N. D. 595, 114 N. W. 377; Wadsworth v. Owens, 17 N. D. 173, 115 N. W. 667; Simmons v. McConville, 19 N. D. 787, 125 N. W. 304; Consolidated L. & I. Co. v. Hall, 7 S. D. 229, 63 N. W. 904; Wentworth v. Miller, 53 Cal. 550; Edson v. Colbourne, 28 Vt. 631, 67 Am. Dec. 730.

. *F. B. Lambert,* for respondent.

"Opinions of witnesses derived from observations are admissible in evidence when, from the nature of the subject under investigation, no better evidence can be obtained." Jones, Ev. 2d ed. § 366.

The decision of the trial court as to the competency of the expert witness is a preliminary question, resting in the discretion of the court, and unless founded on some error of law, or serious mistake, or clear abuse, it will not be disturbed. Jones, Evidence, 2d ed. §§ 369, 382.

"Where a witness gave the result of what he saw, his testimony is not objectionable on the ground that it is a conclusion instead of a statement of facts." Seckerson v. Sinclair, 24 N. D. 625, 140 N. W. 239; State v. Stubley, 41 Iowa, 232.

"The statement of a witness of a conclusion is not prejudicial if

immediately followed by a statement of the grounds therefor." Miller v. DeFrance, 90 Iowa, 395, 57 N. W. 959; Kincaid v. Cavenaugh, 198 Mass. 34, 84 N. W. 307; 40 Cyc. 2408; Blackorby v. Ginter, 34 N. D. 254.

Where error is claimed, if it was without possible prejudice or injury to the complaining party, it was harmless and will not afford ground for reversal. Bradley v. Spikardsville, 90 Mo. App. 416.

"The error, if any, in permitting a witness to state conclusions, is not prejudicial, where the conclusions were accompanied by a statement of the facts from which they were drawn." Dollar v. Bank (Cal. App.) 109 Pac. 499; Churchill v. Mace, 148 Mich. 456, 111 N. W. 1034; Columbia Box & Lbr. Co. v. Drown, 84 C. C. A. 269, 156 Fed. 459; Turner v. Turner, 26 Ind. App. 677, 60 N. E. 718.

In such cases as the one here there is no conversion until after plaintiff had performed his part of the contract and had made a demand for the grain belonging to him under the contract. Upon refusal the action should be commenced seasonably in order to entitle plaintiff to recover the highest market value of the grain between the dates of conversion and the verdict.

The steps were all taken by plaintiff, and he is entitled to the highest market value. Minneapolis Iron Store Co. v. Branum, 36 N. D. 335, 162 N. W. 543.

BIRDZELL, J. This action is a sequel to two former suits, one of which is reported in Merchants' Nat. Bank v. Collard, 33 N. D. 556, 157 N. W. 488. The former suits were actions in the nature of creditors' bills to set aside certain conveyances of real property by Collard and his wife to Fried. The parties to this suit were parties defendant in those actions, and it was there held that the conveyances made by the plaintiff and respondent to the defendant and appellant in this action were not fraudulent. This action was brought to recover the value of the grain raised upon the lands involved in the former suits during the year 1915, which grain, it is alleged, was raised by the plaintiff, who occupied the premises under a cropper's contract. It is alleged that the grain was delivered to the defendant and subsequently converted by him. The defendant answered, setting up certain portions of the lease which he claimed were broken by the plaintiff,

resulting in damage to the defendant, and also alleged that there were certain balances due to him from the plaintiff for goods, wares, and merchandise, and for expenses incurred by the defendant in the defense of the previous actions by the plaintiff's creditors in which it was sought to set aside conveyances made to the defendant. The defendant's items of counterclaim amount to the sum of $5,131.55 as against which he credits the plaintiff with the sum of $1,395, the alleged value of the plaintiff's share of the crops which had been received and sold by the defendant. Many of the items of counterclaim were alleged to have arisen prior to April, 1915, and the plaintiff replied to the counterclaim, alleging that all differences and indebtedness between the plaintiff and defendant had been settled in the previous litigation (in which they were both parties defendant), and were included in the judgment entered in April, 1915. The issues were tried to a jury and a verdict rendered in favor of the plaintiff for the sum of $3,662.76, upon which judgment was entered. This appeal is from the order of the trial court denying a motion for a new trial and from the judgment.

Counsel for the appellant present 39 assignments of error. The first assignment relates to the introduction in evidence of the rental contract between the parties. Defendant's counsel objected to its introduction on the ground that there were upon the back of the exhibit some figures which were foreign to the contract. The exhibit was offered by the plaintiff's attorney with the statement that he did not offer in evidence the figures on the back and that they were to be excluded. There is no merit in this assignment.

It is next urged that the court erred in overruling defendant's objection to a question asked of the plaintiff as follows: "Did you comply with your contract?" The objection was that the question called for a legal conclusion. Compliance with the contract is in itself a conclusion of fact, and, inasmuch as the defendant had ample opportunity to cross-examine the plaintiff as to the character and degree of performance, there is no merit in this assignment.

Assignments 3, 4, and 8 relate to the propriety of permitting the plaintiff and one Holden to testify concerning the price of wheat at Wimbledon on the 25th and 26th of August, 1915, and on subsequent dates up to about May 1st following. The record discloses that there

was ample testimony upon the question of the quantity and grades of grain alleged to have been converted by the defendant, and that the plaintiff testified to his knowledge of the market prices with references to the grades, fixing the dates for the given prices as best he could from memory. It appears that the action was promptly brought after the alleged conversion took place, and that the plaintiff and respondent has brought himself within § 7168 of the Compiled Laws of 1913, which provides for the recovery of the highest market value of the property converted as damages when the action is prosecuted with reasonable diligence.

It is next contended that the court erred in allowing the plaintiff to testify that he had prosecuted his action diligently. We cannot see wherein this testimony is seriously prejudicial to the defendant. This assignment is obviously without merit.

Assignments 10, 11, and 12 relate to rulings of the court excluding the witness's legal conclusion as to whether or not in the previous litigation hereinbefore referred to, to which plaintiff and defendant were parties, title to lands conveyed by the plaintiff to the defendant was in question. The record discloses that the pleadings, findings, conclusions, order for judgment, and judgment in the former suits were admitted, having been offered by defendant's counsel. In the face of this record, it is absurd to contend that it was error to refuse to allow the witness to testify to his conclusion as to what was involved in these former suits.

At this point we may as well consider the validity of the defendant's counterclaim for $500 attorneys' fees, paid in defending the former actions. Apparently the sole object in introducing the records of the former suits was to lay a foundation for this claim. Upon the appeal in the case of Merchants' National Bank v. Collard, supra, this court adopted the findings of the trial court. It appeared that the defendant, Fried, was himself interested in protecting the title acquired from Collard from the assault of the plaintiff. It was claimed that the conveyances were fraudulent, and that Fried was a party to the fraud. Furthermore, it appeared in the litigation that the interests of Collard and Fried did not run altogether parallel, since it was found, contrary to the allegations in Fried's answer, that he still owed Collard a part of the purchase price, which part was held to be subject to the lien of the plaintiff's judgment. Under these circumstances, the defendant,

Fried, in this action can have no valid counterclaim based upon the costs of defending the former suit or suits. It is not even contended here that Collard's title is subject to any defect or that the title vested in Fried has been in danger of being devested on account of any action or circumstance in which he was not a participant. The trial court, however, instructed the jury that if they should find that it had been necessary for the defendant to expend $500 for attorneys' fees to defend the title conveyed to him by the plaintiff, they might allow it as a counterclaim in this action, but if they should find otherwise, defendant would not be entitled to recover the same. This instruction was as favorable as the defendant could ask.

Assignments 18 and 22 attack the propriety of excluding from this case a counterclaim based upon an account of indebtedness owing by the plaintiff to the defendant in the year 1914. This account was first admitted, but later excluded on the ground that, as stated by the trial court, "it is a question which has been held in abeyance for some time, or a ruling rather; and (I) desire to make a ruling that *the account for 1914 has already been adjudicated in the former cases, as well as the crops of 1914, and these matters are not in this case at this time."* The record shows that the trial judge made this ruling after he had "taken the time to look over the pleadings, evidence, and record" [in the former actions]. The former suits were equitable in their nature and were tried to the court, and the same judge who sat in the trial of this action determined the facts in those cases. His statement in the record in this case, quoted above, as well as his statement found in the reasons assigned for denying the motion for a new trial, are entitled to great weight upon the question of *res judicata.* In the memorandum opinion, denying the motion for a new trial, the judge said: "A claim of several hundred dollars was contended for, going back to the 1914 account, which was adjudicated in the former action and shown in the former record." A 1914 book account appears in this case as defendant's exhibit 13. The same account appeared as an exhibit in the former case of Merchant's Nat. Bank v. Collard, 33 N. D. 556, 157 N. W. 488, and inasmuch as it was necessary to determine in that case the amount of Collard's equity, if any, in the land, there can be no question but what his indebtedness to Fried was taken into considera-

tion in arriving at the value of his equity. It was clearly not error to exclude the 1914 account and to instruct the jury to disregard it.

A number of assignments of error are based upon the instructions given to the jury. We have carefully read the instructions and they appear to us to correctly state the issues raised by the pleadings and the law applicable thereto. Assignments 31, 32, 33, 34, 35, and 36 are predicated upon the refusal of the court to give certain requested instructions. An examination of the requested instructions and a comparison of the same with the charge given disclose that, in so far as the requested instructions state the law applicable to the case, such law was amply covered in the instructions given. In these circumstances it was not error to refuse to give the instructions requested.

The record discloses that the issues in this case have been fairly and fully tried before a jury, that the jury was properly instructed upon the law, and that a verdict was rendered which is well within the evidence. The motion for a new trial presents no matter for consideration that is not covered by the other assignments.

Finding no error in the record prejudicial to the defendant, the judgment is affirmed.

### On Petition for Rehearing.

Birdzell, J. In a petition for rehearing counsel for the appellant again urges that, in the previous litigation referred to in the original opinion, the items which went to make up the purchase price of the lands sold by Collard to Fried did not include Collard's account at the Fried store in 1914. In our original opinion we were inclined to attach great weight to the statement of the trial judge in the record in this case to the effect that the 1914 account had been adjudicated in the former cases referred to. A more careful and painstaking examination of the record in the previous litigation, however, convinces us that the trial judge was mistaken in so holding.

Paragraph 6 of the findings of fact in Merchants' Nat. Bank v. Collard, 33 N. D. 556, 157 N. W. 488, finds that on the 22d day of June, 1911, and on the 2d day of August, 1913, Collard transferred certain lands to Anton Fried and Susan Fried, respectively, the consideration for the transfers being fully set forth. The consideration found for

the two transfers was $30 per acre or $19,200, the purchasers assuming encumbrances as a part of the purchase price. It was further found that the Frieds were to charge Collard with the balance of any and all accounts which they had against Collard, and, as soon as the sums so assumed could be ascertained, they, the Frieds, would pay to Collard the balance found to be due on the purchase. The court then found (without itemizing) that the Frieds had paid encumbrances against the land and assumed others, "making the total amount assumed, paid, and charged, as and for the purchase price and properly applied thereon, the sum of $17,418.24." It then found that there still remained due to Collard $1,881.76, and it placed the amount of Collard's equity in the land at this sum, with interest at the rate of 7 per cent from the date of sale, and further found "that the payment of said amount by the said defendants Fried is the only condition attached to said transaction to prevent them from being the fee holders and owners thereof." The question now is, Did the 1914 book account constitute a part of the sum of $17,418.24, credited to Collard upon the purchase price in the above finding?

A careful examination of the transcript of the testimony upon which the above findings were based discloses that the book account for the year 1914 did not enter into the consideration for either of the transfers. On the contrary, it shows that the debit items, amounting to $475.44, were partially offset in the statement by credit allowances for Collard's share of crops delivered to Fried and sold by him, and that neither the crops nor the accounts subsequent to the execution of the second deed entered into the consideration or the findings. In view of this fact, it was clearly error for the trial court in this action to exclude the testimony in support of the counterclaim based upon the book account of 1914. This error cannot be corrected without a retrial of this action, unless the judgment creditor will voluntarily allow credit upon the judgment for the sum of $390.53, with interest at the rate of 6 per cent from January 1st, 1915, to date. The order of this court is that, upon the filing of a confession of judgment in the district court on the defendant's counterclaim in the above amount, the judgment appealed from be, and hereby is, affirmed; and that neither party recover costs on this appeal; otherwise the judgment is reversed and a new trial granted, with costs to abide the event.

The petition for rehearing is denied.