Ed BAUER, Plaintiff and Respondent,

v.

Herbert KRUGER, Defendant and Appellant.

No. 7990.

Supreme Court of North Dakota.

April 13, 1962.

Lewis & Bullis, Wahpeton, for defendant and appellant.

Nilles, Oehlert & Nilles, Fargo, for plaintiff and respondent.

MORRIS, Judge.

This is an appeal from an order denying defendant's motion for a judgment notwithstanding the verdict. The verdict was rendered in an action brought by the plaintiff to recover damages for personal injuries sustained in an accident, the proximate cause of which the plaintiff alleged to be the negligence of the defendant. The defendant denied negligence on his part and alleged and here contends that plaintiff's injuries were caused or proximately contributed to by the plaintiff's own negligence and want of care.

 The evidence, when viewed in the light most favorable to the plaintiff, as it must be on an appeal from an order denying a motion for judgment notwithstanding the verdict, (Vaux v. Hamilton, N.D., 103 N. W.2d 291) discloses the following facts. The accident occurred at about two o'clock A.M. December 28, 1960. The plaintiff was driving a Chevrolet truck-tractor in an easterly direction on State Highway 11. It had a wheelbase of 10 feet, single wheels in front, dual wheels in back, and weighed about 7,000 pounds. It was normally used in connection with a load-carrying detachable trailer which was not attached to the tractor at the time of the accident. The tractor was equipped with a combination of air and hydraulic brakes that reacted quickly and were in good condition. The plaintiff was accompanied by his 19 year old son who was leaning back in the seat and resting. The road was straight and level, with a 24 ft. blacktop surface and 5 ft. shoulders on each side. There was light snow or frost in the air. The wind was blowing and snow was drifting. The plaintiff was driving with his lights on dim, or low beam, to enable him to see better under the condition of the atmosphere. The highway was in fairly good driving condition except for icy spots along rows of trees and through towns. The plaintiff traveled in his proper or south lane of the highway at a speed of 30 to 35 miles an hour. He was not using the windshield wipers and nothing was sticking to the windshield. The driver's visibility was from 100 to 150 feet ahead of the truck. He testified that all at once he came upon what first appeared to be a dark object sitting in the road and then he saw it was a car. This is his description of what happened:

"I hit the air brake, and my truck started to skid. I left go of the brake, and tried to turn out for the vehicle in the road, I knew it was a car then, and I started turning out, and I got a glimpse of some headlights, and by then I hit the ditch, and she just went end over end."

The object that he saw proved to be a dark colored automobile, without lights, sitting in the plaintiff's lane of travel with the left

front wheel across the yellow or center line of the highway. There was room to go around it to the left but not to the right. He first saw the car at a distance of 100 to 125 feet. In a further description of what happened he said that the first thing he did was to apply the brakes; that when they took hold, the truck started to skid; that he turned to the left to go around the car, then saw a gleam of light coming from the opposite direction and let his truck go into the ditch. The point where the truck left the highway was about 50 to 60 feet from the unlighted car. When he felt the truck begin to skid he knew there was ice.

The record shows the following on cross-examination:

"Q. So before you went into the ditch, you had time to step on your brakes, to start to slide, to release your brakes, to see some lights shining down here, and to go in the ditch, is that right?

"A. I had no choice. I just let her go into the ditch.

"Q. All these things happened before you went in the ditch?

"A. Yes, I stepped on the brakes, released them, and went in the ditch. I couldn't give you the distance of the car at all

"Q. You saw some lights?

"A. Yes, sir."

This also appears on cross-examination:

"Q. I believe you were describing some difficulty with visibility on this particular evening?

"A. Yes, sir.

"Q. How far ahead would you say you could see?

"A. Well, the way I was driving, I'd say about a hundred to a hundred and fifty feet ahead of my vehicle.

"Q. And you felt that that would be a clear, safe distance ahead that you could see, a hundred or 150 feet ahead at that speed?

"A. At my speed, yes, I did."

After going into the ditch and turning over, the truck came to rest on its wheels. The son had been thrown out on the right side of the truck. The plaintiff was still in the cab. He slid out on the left side and lay on the ground. The son looked in the cab for his father and went around to the other side of the truck where he found his father trying to get up. The plaintiff told his son to stop the car that was coming and told the son to get the license number presumably of the car that was standing in the road. The son turned around, climbed up on the road, waved his arms, and stopped the oncoming car almost opposite the truck. The son returned to his father, helped him up on the road and into the car. When asked how long after the truck stopped rolling the oncoming car came onto the scene, his answer was, "ten or twelve seconds." When a similar question was asked the son, his reply was, "a few seconds."

The driver of the rescue car was a young lady who was on her way home from working in town. She stopped a short distance past the plaintiff's son, and backed up. She took the plaintiff and his son into Hankinson. The son kept urging her to hurry. She drove between 50 and 60 miles per hour and had no trouble with ice on the highway. She had no difficulty in driving or seeing.

Highway Patrolman Dosch, a witness for the defendant, testified that he arrived at the scene of the accident about three o'clock A.M. He was accompanied by another patrolman. He stated that the condition of the highway was good and there was no snow or ice on it. He examined the highway surface in the vicinity of the accident with the aid of a flashlight and the lights of his car. He found no tire or skidmarks on the main portion of the road but there were tire marks on the shoulder where the

truck had gone into the ditch. Dosch is corroborated by the testimony of the second patrolman. They measured the distance from the front door of the truck as it stood on the north side of the highway to the traveled portion of the highway, and found it to be 41 feet. The weather was cloudy and there were ice crystals or light snow in the air. The patrolman found the defendant in an intoxicated condition, asleep in his car which was standing in the south lane of the highway. There is no question as to the defendant's negligence. The only question raised by the defense in support of the motion for judgment notwithstanding the verdict is that the evidence shows that the plaintiff was guilty of contributory negligence as a matter of law which bars his recovery.

It is the established rule of this Court that questions of negligence, contributory negligence and proximate cause are questions of fact for the jury in a personal injury action unless the evidence is such that reasonable minds can draw but one conclusion therefrom. Leonard v. North Dakota Coop. Wool Marketing Association, 72 N.D. 310, 6 N.W.2d 576; McCullagh v. Fortune, 76 N.D. 669, 38 N.W.2d 771; Reservation Motor Corporation v. Mayer, 77 N.D. 431, 43 N.W.2d 537; Skramstad v. Miller, 78 N.D. 450, 49 N.W.2d 652; Goulet v. O'Keeffe, N. D., 83 N.W.2d 889, 36 A. L.R.2d 8; Gravseth v. Farmers Union Oil Company of Minot, N.D., 108 N.W.2d 785.

To constitute contributory negligence as a matter of law the facts and circumstances must be such that no other inference can fairly and reasonably be drawn therefrom. Haugo v. Great Northern Railway Co., 27 N.D. 268, 145 N.W. 1053; Logan v. Schjeldahl, 66 N.D. 152, 262 N.W. 463.

Section 39-09-01, NDCC, prescribes the following standard of care required of one operating a vehicle:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than

is reasonable and proper, having due regard to the traffic, surface, and width of the highway and any other conditions then existing. No person shall drive any vehicle upon a highway at a speed to endanger the life, limb, or property of any person."

In Serbousek v. Stockman Motors, Inc., N.D., 106 N.W.2d 879, we pointed out that North Dakota has no statutory rule of safety and that the formulation, adoption and application of the rule depends upon our court decisions. In Bagan v. Bitterman, 65 N.D. 423, 259 N.W. 266, the rule is stated to be:

"That one must drive at such a speed as to be able to stop within the assured clear distance ahead."

In that case, and in Schaller v. Bjornstad, 77 N.D. 51, 40 N.W.2d 59, we held that under the facts disclosed by the records in those cases the drivers of vehicles that collided with other unlighted vehicles that were standing on the highway were guilty of contributory negligence that barred recovery. On the other hand, in Lostegaard v. Bauer, 78 N.D. 711, 51 N.W.2d 761, we held that the plaintiff who drove her automobile into the rear of an unlighted truck parked on the highway was not barred as a matter of law from recovery on the ground of contributory negligence in view of the emergency created by distracting circumstances disclosed by the evidence. In Serbousek v. Stockman Motors, Inc., supra, we discussed these and other cases involving the defense of contributory negligence and held that contributory negligence was not established as a matter of law.

It is not necessary to again review our cases in detail. They demonstrate, however, that the rule of safety is not to be applied with such rigidity as to render guilty of contributory negligence every motorist who fails to stop or turn aside to avoid a collision with a stationary vehicle unlawfully obstructing the highway. Exculpatory circumstances may render the question of the negligence of an oncoming driver one of

fact for the jury. Such circumstances may be present when the driver is compelled to act in an emergency which he did not create and which he could not reasonably foresee.

■ In 61 C.J.S. Motor Vehicles § 460, it is said:

"Where a traveler upon or across a highway is confronted by a sudden emergency created by the negligence of another and not by his own fault, he is not held to the same degree of care and prudence as is ordinarily demanded of a person who has time for deliberation and the full exercise of his judgment, and he is not guilty of contributory negligence if he acts as an ordinarily prudent person would act under like circumstances."

This statement is quoted in Lostegaard v. Bauer, supra.

In Cyclopedia of Automobile Law and Practice, Blashfield, Volume 10B, Section 6648, it is said:

"Generally, whether a motorist was confronted with an emergency, and whether, assuming that he was confronted with an emergency, he acted negligently, are jury questions."

"In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency not caused by his own tortious conduct which requires rapid decision is a factor in determining the reasonable character of his choice of action." Restatement of the Law, Torts, Section 296; Campbell v. Jackson, 65 S.D. 154, 272 N.W. 293.

■ When the plaintiff saw a dark object in his lane of travel at a distance of 100 to 125 feet, he immediately applied his brakes, which was the normal thing to do. Then his truck started to skid. The jury may have found that the skid created an unanticipated emergency that required further action on his part. This action he took by turning to the left where he had room to pass the object on the north side of the highway. At this point he was confronted with the gleam of lights approaching from the opposite direction, which the jury may have decided constituted a second emergency. He said, "I had no choice. I just let her go into the ditch."

We are asked to say as a matter of law that he was guilty of negligence which bars his recovery. It is argued that at the time he came upon the defendant's car he was overdriving his lights and violating the rule of safety. This contention at the most presents a question of fact that was for the jury. It may be inferred that had it not been for the skid he could have stopped his truck without a collision and there would have been no need to turn to the left. It is further argued that the plaintiff was negligent in driving at a speed of 30 to 35 miles an hour when there were icy spots on the road along rows of trees. The extent and frequency of the icy spots are not described in the evidence. The plaintiff thought his skid was caused by ice, although the highway patrolmen found no ice at the scene of the accident about an hour later. When all of the evidence concerning speed, lights and the condition of the road are considered, we cannot say as a matter of law that the plaintiff was negligently operating his truck as he approached the scene of the accident or that the emergency created by the skid was the result of negligence on his part.

It is further argued that the plaintiff was negligent in letting his truck go into the ditch rather than attempting to stay on the highway and pass the defendant's car on its left. In support of this contention it is argued that the car approaching from the opposite direction must have been some distance away, that the plaintiff would have had sufficient time to have passed in safety, and that the plaintiff was negligent in failing to do so. The evidence does not reveal the speed of the approaching car or its distance from the scene of the accident at the

time the truck went into the ditch. However, it is not disputed that the car was approaching and that its lights became visible to the plaintiff at the time he determined that he had no choice but to let his truck go off the road. The jury may have found that this situation created a second emergency which justified the plaintiff in making the decision which he did rather than choose a course which hindsight shows was probably less dangerous. In connection with this point a discussion of and reference to cases involving the negligence of automobile drivers while acting in emergencies is helpful. In St. Johnsbury Trucking Co. v. Rollins, 145 Me. 217, 74 A.2d 465, 21 A.L.R. 2d 88, the plaintiff sued for damage to its tractor-trailer as the result of overturning when the trailer's right wheels slipped over a concealed shoulder of a highway after being driven to its right to avoid a collision with the defendant's truck which had stopped diagonally across the right-hand lane of the highway being traversed by plaintiff's tractor-trailer. The accident happened after dark. It was snowing. The plaintiff's vehicle was proceeding not to exceed 25 miles per hour. It was equipped with airbrakes which at that speed and on that road could have been operated to stop the vehicle within a distance of 50 feet. It was being operated with headlights on low beam for the purpose of giving better visibility in the snowstorm. The defendant's truck was unlighted, but just as the plaintiff came within about 150 feet of the defendant's truck, its headlights were turned on. As a result the plaintiff was momentarily blinded. He swerved to the right, slowed his vehicle, changed gears and brought the plaintiff's vehicle to a stop within 10 feet of the defendant's truck. The right-hand wheels of the plaintiff's trailer slipped over the shoulder and the vehicle overturned. The defendant urged that even if his conduct was negligent, such negligence was not the proximate cause of plaintiff's damages because plaintiff's vehicle stopped before actual collision with that of the defendant. This contention was rejected as being without merit. The defendant further urged contributory negligence on the ground that the rate of speed of plaintiff's truck was such that it could not stop within the range of his headlights. The court said:

"The driver of an automobile faced with a sudden emergency and possible impending collision caused by the negligence of the defendant is not necessarily guilty of contributory negligence because he turns so far to the right in attempting to avoid such collision that his wheels slip off the shoulder of the road, concealed by drifting snow, and overturns his vehicle. The determination of whether or not such action is that of an ordinarily prudent man under like circumstances is a question of fact which should be left to the jury. An affirmative answer would be justifiable. As the jury could have found that these circumstances existed in this case, it could have found that the action of the plaintiff's agent was that of a reasonably prudent man in like situation and that no negligence on his part contributed to the damage suffered by the plaintiff." St. Johnsbury Trucking Co. v. Rollins, supra.

In Washington v. Good, 10 Cir., 260 F. 2d 268, Miss Washington was a passenger in a car operated by Cash at night and without warning lights on the rear. The Cash automobile was struck by a truck driven by the defendant Good. The main contention of the plaintiff was that Good was guilty of negligence as a matter of law in that he failed to operate his truck at such a speed so as to enable him to stop or pass another automobile within the actual range of his vision. In rejecting this contention, the court said:

"Moreover, when Good came over the crest of the hill and unexpectedly came upon the unlighted Cash automobile stopped or moving very slowly in the middle of the two eastbound lanes

of the highway and his load shifted, and the wheels of the truck did not properly track, he was confronted with a sudden emergency. It is a well-settled rule that when the operator of a motor vehicle is confronted with a sudden emergency not of his own making, he is not held to the same accuracy of judgment as would be required of him if he had time for deliberation, and if he exercises such care as an ordinarily prudent man would exercise, when confronted by a like emergency, he is not liable for an injury which results from his conduct."

Minder v. Peterson, 254 Minn. 82, 93 N.W.2d 699, involved a collision between an automobile owned by the plaintiff and a truck owned by the defendants. It was contended that the defendants' truck driver was negligent as a matter of law and either knew or should have known that the truck brakes were defective. The court discusses the emergency rule and says:

"Here, the time within which to act was very limited if the jury found that Poncelet (the truck driver) had no knowledge of the defective condition of the brakes until he was about 165 feet from the intersection. Whether Poncelet met the standard of care required for a reasonable man under the circumstances existing after so discovering that his brakes would not respond was a proper question for the jury's determination."

See also Berounsky v. Ogden, 90 N.H. 334, 9 A.2d 510.

Of interest here as bearing upon the defense of contributory negligence are two cases worthy of consideration. Sisson v. Weathermon, Iowa, 108 N.W.2d 585, was an action for the death of a truck driver who lost control of his vehicle and was thrown from it after he swerved partly on- to the shoulder of the highway to avoid two unlighted cars. The defendants contended that the decedent violated the rule of assured clear distance, which is a statutory rule in Iowa, that he failed as a matter of law to keep a proper lookout, and that his contributory negligence in these respects barred recovery. According to the stated facts, at between 15 and 20 feet back of the rear car the deceased turned quickly to the left to avoid hitting the cars and as he straightened out his left wheels drove up on the shoulder of the highway. As he turned back toward the right-hand lane he was thrown violently to the pavement and sustained injuries from which he died. The court reached the conclusion that the question of contributory negligence was for the jury. Ryan v. Cameron, et al., 270 Wis. 325, 71 N.W.2d 408, involved the contributory negligence of a plaintiff who swerved his automobile to pass an automobile parked without lights on a traveled portion of the highway at night. He was injured when his car struck a tree. The trial court directed a verdict for the defendants. The Supreme Court reversed the judgment and held that under the facts testified to by the plaintiff a jury issue was presented as to whether the plaintiff was negligent with respect to speed, lookout, management and control of his automobile.

The negligence of the defendant is not questioned. Neither is there any question raised as to that negligence being a proximate cause of the accident and the plaintiff's injuries. When we consider the evidence disclosed by this record and the inferences that may be reasonably drawn therefrom, we cannot say that the plaintiff was guilty of contributory negligence as a matter of law. That question was one for the jury. Its verdict will not be disturbed. The order appealed from is affirmed.

SATHRE, C. J., and BURKE, TEIGEN and STRUTZ, JJ., concur.