### NORTHERN PAC. RY. CO. v. TRACY.

(Circuit Court of Appeals, Eighth Circuit. October 2, 1911.)

#### No. 3,562.

1. RAILROADS (§ 324*)—ACCIDENTS AT CROSSINGS—RECIPROCAL DUTY TO EXERCISE CARE.

The duty to exercise care to prevent accidents at railroad crossings is reciprocal, and a traveler on the highway cannot recover for an injury, although the railroad company was negligent, if his own negligence contributed to the injury. What constitutes due care on the part of either party may depend on the peculiar circumstances of the case.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1020–1025; Dec. Dig. § 324.*]

2. NEGLIGENCE (§ 136*)—ACTIONS FOR NEGLIGENCE—WHEN NEGLIGENCE QUESTION FOR THE COURT.

The question of negligence becomes one of law for the court when the facts are undisputed and the inferences to be drawn from them are so clear that reasonable men ought not to differ.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

3. RAILROADS (§ 326*)—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.

Plaintiff's employés attempted to run a heavy traction engine over a crossing on defendant's railroad, but, owing to the temporary removal of the planking for the making of repairs, it became stalled when over the tracks, and they were unable to move it either way. While working with it, they saw the smoke from an approaching train when five miles away, but did nothing to warn the trainmen except to blow the whistle, which was not heard. Owing to a curve in the track, the fact that the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

traction engine was on the crossing could not be, and was not, known by the trainmen until too late to avoid a collision. *Held* that, under the circumstances, the failure of plaintiff's employés to send some one down the track to signal the train constituted negligence as matter of law, which precluded a recovery by plaintiff for the loss of his engine.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 326.*]

In Error to the Circuit Court of the United States for the District of North Dakota.

Action at law by Charles T. Tracy against the Northern Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Reversed.

N. C. Young (Ball, Watson, Young & Lawrence, on the brief), for plaintiff in error.

Daniel B. Holt (Engerud, Holt & Frame, on the brief), for defendant in error.

Before ADAMS and SMITH, Circuit Judges, and MARSHALL, District Judge.

MARSHALL, District Judge. This writ of error challenges a judgment recovered by the defendant in error, hereinafter referred to as the plaintiff, against the plaintiff in error, hereinafter referred to as the defendant, in an action charging that the defendant negligently injured the plaintiff's steam traction engine at a railway crossing at the town of Taylor, N. D. In the complaint the defendant's liability is placed on two grounds: (1) That the crossing was not planked as required by a statute of North Dakota; and (2) that the defendant "so carelessly, willfully, and negligently ran its locomotive and cars" as to collide with the traction engine and destroy it. The defendant by answer denied negligence on its part, and alleged that the collision was caused by the negligence of the plaintiff.

The facts are these: The defendant's railway runs along the south side of the town of Taylor. At the crossing in question the line of track is nearly east and west, but on a three-degree curve that begins 148 feet west of the place of the accident, and continues 1485 feet east of it. The curve is toward the south. From this crossing a train approaching from the east is in plain sight for 3345 feet, but, because of the curve, the rolling character of the ground, and the substantial identity in elevation, at the crossing of the track and surrounding ground, the track itself cannot be seen from the cab of the locomotive until the train is about seven or eight car lengths from the crossing. This crossing had been planked, but the defendant had been engaged in resurfacing its track, and had taken the planks up. Sand had been used to fill in between the rails and on the approaches to the crossing. This had been the condition for from 30 to 60 days prior to the accident. At the crossing were two tracks—the main line track to the north and a passing or side track to the south. From center to center of these tracks the distance was 14 feet. Between 9 and 10 o'clock a. m. of August 28, 1909, Brown as engineer and Neset as fireman, employés of the plaintiff in charge of the steam traction en-

gine, attempted to cross the line of railway at the crossing with this engine, which weighed from 16 to 18 tons. They succeeded in crossing the side track after a few minutes' delay, and by the use of pieces of plank to block the rail they managed to cross the south rail of the main track with the front wheels of the traction engine. They failed, however, in all attempts to cross the north rail of the track. The plank before used as blocking was broken by its prior use, and the wheels of the engine sank in the soft sand. In this attempt to cross from 20 to 30 minutes elapsed. At some time, while the front wheels of the traction engine were between the rails of the main track, smoke from the defendant's approaching train was seen. The train was then at Richardton, five miles to the east of Taylor. This train was a fast passenger train, and did not stop at Taylor. Plaintiff's servants in charge of the engine, knowing that the train was approaching, became apprehensive that they could not succeed in crossing the track in time, and attempted to back the engine to the south. The heavy driving wheels of the engine stuck against the north rail of the side track and prevented further movement to the south. The front wheels remained between the rails of the main track. This was the situation for four to five minutes before the collision. In the meantime the train came in sight running at a speed of about 40 miles an hour. The engineer was on the right side of the cab and could not see the crossing. The fireman was on the left side. He discovered the traction engine when about 12 car lengths from the crossing, but could not determine its position with reference to the crossing because of the curve and the intervening rolling ground. At seven or eight car lengths from the traction engine he first realized its dangerous situation, and immediately notified the engineer, who applied the emergency brake, but too late to escape a collision. The only effort made by the men in charge of the traction engine to attract the notice of those in charge of the approaching train was by blowing the whistle of the traction engine two or three times. This was not heard on the train because of the noise due to its rapid motion.

[1, 2] A statute of North Dakota (Rev. Codes 1905, § 4321) made it the duty of the railway company to plank this crossing between the rails of the track and maintain it in that condition, but the trial judge charged the jury that the violation of this statute was not the proximate cause of the accident. The case went to the jury, however, on the claim that the defendant's servants in charge of the train were negligent in failing to discover the perilous situation in time to have avoided the collision. The defendant requested a peremptory instruction that the jury find a verdict in its favor because of the contributory negligence of the servants of the plaintiff in charge of the traction engine. This was refused, and its refusal is assigned as error. The defendant was required by statute to plank this crossing and to maintain it in suitable condition, and was expressly made liable for any injury suffered by reason of its failure so to do. Beyond this, it was the duty of the defendant to exercise care and watchfulness in approaching the crossing with its train in recognition of the right of the public to use it and the probability of its use, but neither its

statutory nor common-law duty excluded the defense of contributory negligence. Railway Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542. The rights of the railway and of travelers on the highway at grade crossings are reciprocal. Each must use care to avoid a collision. The speed of trains, the difficulty in stopping, and the impossibility of turning aside to avoid an impending collision result in a practical recognition of a priority of right in the railway. It is only by a strict enforcement of these reciprocal duties that accidents at crossings can be averted. To this end the law, common and statutory, has passed beyond the generality that due care must be used, and has, in the usual case, made specific acts the test of the use of care. A familiar illustration is the requirement that the traveler on the highway, before crossing the railway line, must look and listen for an approaching train. Railway Co. v. Moseley, 57 Fed. 921, 6 C. C. A. 641; Pyle v. Clark, 79 Fed. 744, 25 C. C. A. 190; Schofield v. Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224; Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758. Statutes prescribing the blowing of a whistle, or the ringing of a bell on the approaching locomotive, are based on the same principle. In a particular case special circumstances may increase the care required of both the traveler and of the railway company; and a traveler, failing to exercise due care cannot complain of an injury received through the negligence of the railway where his own negligence contributed to it. The question of negligence becomes a question of law for the court when the facts are undisputed and the inferences to be drawn from them are so clear that reasonable men ought not to differ. Railway Co. v. Jarvi, 53 Fed. 65, 3 C. C. A. 433; Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213. These general principles are undisputed. The difficulty is in their application.

[3] In this case the servants of the plaintiff realized that the train was approaching the crossing, and a collision was possible when the train was yet at Richardton, five miles distant. The traction engine was so massive that a collision might well result in loss of life to passengers on the train. The exigency was not so sudden as to preclude cool judgment. The train running at 40 miles an hour must have taken between seven and eight minutes to traverse the intervening distance. What effort was made to avoid the accident? An unsuccessful attempt was made to back the traction engine. This was essentially a doubtful experiment, and, in this case, entirely fruitless. Next, a few blasts were blown on the steam whistle. The engineer of the traction engine, familiar with the operation of trains, testified that it was no surprise to him that those blasts were not heard by the men in the cab of the locomotive. The curve and the consequent difficulty in determining the relation of the traction engine to the railway track was patent. Some signal ought to have been given. There was time for one of the men to have proceeded eastward along the track and by the waving of a hat or coat to have indicated the danger. If this had been done, the accident would not have happened. That it ought to have been done seems to us so clearly to accord with reason and experience as to have entitled the defendant to a directed verdict. There

are other rulings assigned as error and argued, but, in the view we take of the case, we deem it unnecessary to consider them.

Because the jury was not instructed to find for the defendant as requested, the judgment must be reversed, and the action remanded for a new trial; and it is so ordered.