Gertrude GLESON, Plaintiff and Appellant,

v.

James THOMPSON, Defendant and Respondent.

No. 8450.

Supreme Court of North Dakota.

Dec. 7, 1967.

Duffy & Haugland, Devils Lake, and Robert G. Manly, New Rockford, for appellant.

Idean M. Locken, Lakota, for respondent.

ERICKSTAD, Judge.

Pursuant to N.D.C.C. Chapter 32–21, the plaintiff, Gertrude Gleson, widow of Marvin Gleson, brought an action for wrongful death against the defendant, James Thompson, by amended complaint dated March 23, 1966. In the complaint Mrs. Gleson alleged that at about 8:00 a. m., October 5, 1964, her husband was driving east on an arterial county road 2 miles south of Kloten, in Nelson County, North Dakota, and that he was driving carefully and at a reasonable and lawful speed. She further alleged that at the same time Mr. Thompson was driving south on a county road that intersected the road on which Mr. Gleson was traveling, and that Mr. Thompson was operating his car negligently, in that he was driving at an excessive speed without having his car under proper control, without keeping an adequate lookout, and without yielding the right-of-way to Mr. Gleson's car, resulting in a collision between the two cars and injuries to Mr. Gleson which caused his immediate death. She sought $850 in special damages for funeral expenses and $19,150 in general damages, or a total judgment of $20,000 plus costs.

In his answer Mr. Thompson admitted, among other things, that a collision occurred between his vehicle and Mr. Gleson's vehicle at the time and place alleged and asserted as an affirmative defense that any injuries sustained by Mr. Gleson which may have caused or contributed to his death, were caused or contributed to by Mr. Gleson's own carelessness, in that he failed to have his vehicle under control, did not maintain a proper lookout, was driving at an excessive speed, and failed to yield the right-of-way to Mr. Thompson's vehicle, which had entered the intersection before the vehicle driven by Mr. Gleson.

At the close of the plaintiff's case and again when all the evidence had been submitted, the plaintiff made a motion for a directed verdict. Both motions were denied. When the jury returned a verdict for a dismissal of Mrs. Gleson's action, she made a motion for judgment notwithstanding the verdict or in the alternative for a new trial. That motion was also denied by the trial court.

Mrs. Gleson appeals to this court from the judgment rendered on the verdict, as well as from the order denying the motion for judgment notwithstanding the verdict or in the alternative for a new trial.

We shall consider first the appeal from the order denying the motion for judgment notwithstanding the verdict or in the alternative for a new trial.

Mr. Thompson contends that because Mrs. Gleson failed to specify with particularity the errors of law complained of or the insufficiency of the evidence to support the verdict in her motion for judgment notwithstanding the verdict or in the alternative for a new trial, those issues should not be considered by this court.

Pertinent to this contention is N.D.C.C. § 28-18-09:

28-18-09. Specifications of errors and insufficiency of the evidence.—A party desiring to make a motion for a new trial or to appeal from a judgment or other determination of a district court or county court with increased jurisdiction, except upon appeals triable de novo in the supreme court, shall serve with the notice of motion, or notice of appeal, a concise statement of the errors of law he complains of, and if he claims the evidence is insufficient to support the verdict or that the evidence is of such character that the verdict should be set aside as a matter of discretion, he shall so specify. A specification of insufficiency of the evidence to sustain the verdict or decision of the court shall point out wherein the evidence is insufficient and it shall be proper to include in such specification, specifications of facts conclusively established, together with the facts claimed not to be established, in such manner as to show intelligibly wherein, on the whole case, the verdict or decision is not supported by the evidence.

North Dakota Century Code.

Consistent with that statute is what we said in the syllabus of a recent opinion on an appeal from an order granting a motion for judgment notwithstanding the verdict:

A motion for judgment notwithstanding the verdict made on the ground of insufficiency of the evidence or errors of law must specify with particularity wherein the evidence was insufficient or wherein errors were made.

Erhardt v. Gold Seal Chinchillas, Inc., 144 N.W.2d 744 (N.D.1966), Syllabus 3.

The same rule would apply in an appeal from an order granting or denying a motion for a new trial.

Notwithstanding that rule, when the opposing party does not object to the movant's failure to specify with particularity the errors of law complained of or the insufficiency of the evidence, the trial court may consider those issues. Sullwold v. Hoger, 110 N.W.2d 457, 459 (N.D.1961).

Here the statement of the case does not disclose that such objection was made by the opposing party at the time of the motion for judgment notwithstanding the verdict or in the alternative for a new trial. Hence, according to what this court said in a decision rendered in 1933, the trial court could consider those issues, even though to do so it was required to search the record. Clausen v. Miller, 63 N.D. 778, 249 N.W. 791, 794–795 (1933).

It is interesting to note that in this case the trial court complained of the indefiniteness of the specifications of error both as to questions of law and as to the insufficiency of the evidence, but nevertheless reviewed the specifications in the interests of justice. Accordingly, without determining that we are required to do so, we also, in the interests of justice, shall review those specifications.

Let us first consider the specification in the motion for judgment notwithstanding

the verdict or in the alternative for a new trial which asserts that the evidence is insufficient to justify the verdict. The rules that apply in considering this question have been applied in many previous instances.

First, questions of negligence, proximate cause, contributory negligence, and assumption of risk are ordinarily questions of fact for the jury; it is only when the evidence is such that reasonable men can draw but one conclusion therefrom that they become questions of law for the court. Degenstein v. Ehrman, 145 N.W.2d 493 (N.D.1966); Grenz v. Werre, 129 N.W.2d 681 (N.D.1964); Vick v. Fanning, 129 N. W.2d 268 (N.D.1964).

Second, in determining the sufficiency of the evidence to sustain the verdict, the evidence must be viewed in the light most favorable to the verdict. Degenstein v. Ehrman, supra; Grenz v. Werre, supra.

Third, the credibility of the witnesses and the weight to be given to their testimony are questions of fact for the jury to determine. Degenstein v. Ehrman, supra; Grenz v. Werre, supra.

As the verdict was for a dismissal of Mrs. Gleson's action, the jury must have concluded that Mr. Thompson was not negligent; or that if he was negligent, his negligence did not contribute proximately to the collision; or that Mr. Gleson was negligent and his negligence contributed proximately to the collision.

Viewing the evidence in the light most favorable to the verdict, we believe that the jury could have found that Mr. Gleson was negligent in failing to keep such a lookout as would permit him to see what a person in the exercise of ordinary care would have seen in like circumstances [Anderson v. Schreiner, 94 N.W.2d 294 (N.D.1958)], or that he was negligent in failing to drive at such a speed as to be able to stop within the assured clear distance ahead [Bagan v. Bitterman, 65 N.D. 423, 259 N.W. 266, 267 (1935)], and that his negligence contributed proximately to the collision.

Mr. Thompson testified that on the day of the collision he was traveling from Lakota, where he lived, to a new missile site where he was to report to work at 9:00 a. m., and that as a guide to reach the site he had a map to follow; that while driving south, he drove over a hill approximately 350 feet north of the intersection where the collision occurred; that off the shoulder of the road between the hill and the intersection was a yield-right-of-way sign which he did not see; that he was traveling at about 40 miles per hour, but that he slowed his vehicle so that he was traveling between 15 and 20 miles per hour as he approached the intersection; that between 50 and 75 feet north of the intersection he looked toward his right and saw nothing; that he then looked toward his left and saw nothing; that on entering the intersection he heard no horn or other warning; that while in the intersection he heard no sound of braking or of gravel being thrown; that his vehicle was almost through the intersection when it was hit on the right side toward the rear; and that he did not see the Gleson vehicle before the collision and was rendered unconscious by the collision.

State Highway Patrolman William C. Koehn testified, among other things, that the yield-right-of-way sign on the north-south road was situated at a point 143 feet north of the northwest corner of the intersection. He further testified that there was a hill west of the intersection, its crest being approximately 300 feet west of the intersection, and that there was a hill north of the intersection, its crest being approximately 350 feet north of the intersection.

Photographs of Mr. Thompson's car which were received in evidence over Mrs. Gleson's objection disclosed damages to the right side from the center to the rear.

Mr. Gleson was killed instantly, and thus we do not know what his testimony would have been.

Viewing that evidence in the light most favorable to the verdict from the standpoint of sufficiency of the evidence, we see no basis for granting either a judgment notwithstanding the verdict or a new trial.

The next point urged in the motion for judgment notwithstanding the verdict or in the alternative for a new trial is that under the evidence Mrs. Gleson was entitled to a directed verdict.

When at the close of all the evidence one party moves for a directed verdict in his favor and the motion is resisted by the adverse party, the court must submit to the jury the issues of all claims as to which evidence has been received, and as to such claims the motion shall be denied. N.D.R.Civ.P. Rule 50(a).

In considering the validity of a ruling on a motion for a directed verdict, this court must consider the evidence in the light most favorable to the party against whom the motion was made. If honest and intelligent men may fairly differ in their conclusions from the evidence upon any material fact in the case, it is for the jury to pass upon such evidence. State Automobile & Casualty Underwriters v. Skjonsby, 142 N.W.2d 98 (N.D.1966), Syllabus 3 and 4.

It is evident from what we have already said in relation to the sufficiency of the evidence that we believe the facts in this case to be such that honest and intelligent men might fairly differ in their conclusions from the evidence, and that it was proper for the court to permit the jury to pass on the evidence. Thus, it was proper for the court to deny the motions for a directed verdict.

The next specification of error asserted in the motion for judgment notwithstanding the verdict or in the alternative for a new trial is that the court erred in receiving in evidence over Mrs. Gleson's objections certain exhibits.

The first specification as to the erroneous admission of exhibits is that a mutilated yield-right-of-way sign, which was damaged and altered several months after the accident in question, was received in evidence over Mrs. Gleson's objection, to her prejudice.

The sign was received in evidence through the testimony of Mr. Roy Olson, Nelson County Engineer and Road Superintendent. He testified that it was the responsibility of his department to place road signs along county highways; that on October 5, 1964, there was a yield-right-of-way sign near the intersection where the accident took place and that his department had put it there; that he was not at the intersection on the day of the accident but that he did visit it a few days later, and that he then observed the sign to be 6 feet from the west shoulder of the road and 156 feet north of the centerline of the east-west road; and that the sign was knocked down during the winter and was broken off close to the ground.

When shown Defendant's Exhibit F, a wood post which appeared to have been broken off at the bottom and which appeared to have attached to its top a yield-right-of-way sign that had been bent over on each side so that it was no longer readable, Mr. Olson said that the exhibit was what was left of the sign that was north of the intersection on October 5, 1964. Exhibit F was then offered in evidence, but before it was received, counsel for Mrs. Gleson asked for permission to interrogate the witness for the purpose of laying a foundation for an objection. It was then brought out on cross-examination that the witness had not seen the sign from the time that it was standing in position north of the intersection until it was brought into the courtroom and that he did not know what had happened to the sign in the interim nor in whose possession it had been; but he asserted that he knew it was the same sign and that he could identify it because of the way it was broken off. He further testified that before the sign was knocked down it extended 3.7 feet above the level of the road.

At this point counsel for Mrs. Gleson objected to the admission of the sign in evidence on the ground that it had not been tied up with the facts in the lawsuit.

Here then we have the receipt in evidence of a part of a road sign on the strength of the opinion (of a person who had not been qualified as an expert) that the part introduced was the top part of a sign, the bottom part of which remained in position north of the intersection, without tracing the possession of the top part of the sign from the time it was originally broken off to the time that it was introduced in court, and further without introducing in evidence the bottom part so that the jury might examine the two parts to determine whether they were actually parts of one sign.

§ 774. Identification of object or article; change in condition.

Articles or objects which relate to or tend to elucidate or explain the issues or form a part of the transaction are admissible in evidence when duly identified and shown to be in substantially the same condition as at the time in issue. In most cases it is not possible to establish the identity in question by a single witness, since the object or article has usually passed through several hands before being analyzed or examined or before being produced in court, and under such circumstances it is necessary to establish a complete chain of evidence, tracing the possession of the object or article to the final custodian, and if one link in the chain is missing, the object or article cannot be introduced.

29 Am.Jur.2d Evidence § 774 (1967).

See also: Morris v. Miller, 83 Neb. 218, 119 N.W. 458, 20 L.R.A.,N.S., 907 (1909).

In an Ohio case involving a workmen's compensation claim, when a badly broken and bent steering wheel from an automobile was offered to show the nature and violence of the claimant's injuries, without any identification and without any evidence as to its condition when offered as related to its condition at the time in issue, the lower court received the steering wheel in evidence. On appeal this was found to have been error. In its syllabus the Ohio Court of Appeals said:

When an object, article, machine, machine part, tool, weapon or similar concrete thing is to be used in evidence to prove a fact with which it is related as of a previous time or event, it is not competent evidence unless it is first identified as the same object and shown to be substantially in the condition as of the time or event to which it is claimed to be related * * *.

Gutman v. Industrial Commission, 71 Ohio App. 383, 50 N.E.2d 187 (1942).

▮▮▮▮ The admission or exclusion of demonstrative evidence is addressed to the sound discretion of the trial court. Grenz v. Werre, 129 N.W.2d 681, 687 (N.D.1964). It is our view that the trial court abused its discretion in receiving the sign in evidence, because of the incomplete chain of evidence, which resulted in unsatisfactory identification.

▮▮▮▮ But, as was pointed out in Grenz, even if it be held that the trial court erred in admitting an exhibit in evidence, the burden nevertheless rests on the appellant to show that the error complained of was prejudicial.

▮▮▮▮ In this respect the cross-examination brought out that the sign was not in damaged condition at the time of the accident but was in the condition shown by one of the photographs received in evidence. The receipt of the damaged sign in evidence did not in any way change the other testimony of the county engineer, the most pertinent part of which was that the sign stood 3.7 feet above the level of the road before being damaged. We consider the error harmless, therefore, under N.D.R.Civ.P. Rule 61.

The next specification of error contained in the motion for judgment notwithstanding the verdict or in the alternative for a new trial is that it was error for the court to receive in evidence photographs of the cars taken approximately a week after the collision, after the cars had been moved to parking lots in McVille.

Mrs. Gleson contends that the receipt of Defendant's Exhibits A through E, consisting of photographs of the two cars taken after they had been towed to separate parking lots in McVille, constituted an abuse of discretion on the part of the trial court.

Defendant's Exhibits A and B were photographs of the 1960 model Chevrolet station wagon which had been driven by Mr. Gleson. Those exhibits were received in evidence after counsel for Mrs. Gleson had stated that he had no objection to their receipt in evidence; therefore, no complaint may now be made concerning their admission in evidence.

Defendant's Exhibits C, D, and E were photographs of Mr. Thompson's 1955 model Chevrolet taken after it had been towed on a gravel road from the scene of the accident approximately 9 miles to a parking lot in McVille. It is Mrs. Gleson's contention that during the course of moving the vehicle and while it was left unattended in the parking lot, radical changes in the vehicle may well have occurred before the photographs were taken.

As we said most recently in Froemke v. Hauff, 147 N.W.2d 390, 398 (N.D.1966), the question of sufficiency of foundation for the admission of a photograph in evidence is a matter within the discretion of the trial judge.

The fact that the photographs were taken at a time remote from the transaction in question does not render them inadmissible if witnesses are able to testify that they are correct representations of the conditions existing at the

time in question. 3 Jones, Evidence § 630 (5th ed. 1958).

In this case Mrs. Gleson does not point out in what respect the vehicle had been changed from the time of the accident to the time of the taking of the photographs, but merely asserts that changes may have occurred. For that reason we need not consider what effect actual changes might have had on the admissibility of the photographs.

As the witness Nace Haugen, operator of the wrecker which brought the Thompson vehicle from the scene of the accident to a parking lot in McVille within a few hours after the accident, testified that the photographs of the Thompson vehicle, Defendant's Exhibits C, D, and E, were true representations of the vehicle as he found it at the scene, we believe that proper foundation was laid for the receipt in evidence of the exhibits, and thus that the trial court did not abuse its discretion in receiving the exhibits in evidence.

Lest it be urged that we have ignored Mrs. Gleson's contention that the photographs should have been excluded, if for no other reason than that they were of no probative value, we point out that it is our view that they were of value to the jury in helping them determine the points of impact and speed—points of impact from the location of the damage and speed from the degree of damage.

The next specification of error contained in the motion for judgment notwithstanding the verdict or in the alternative for a new trial is that errors in law, to which Mrs. Gleson excepted, occurred during the trial.

It appears that what is complained of is that the court excluded the testimony of witness Osborne Galde as to the speed of Mr. Gleson's vehicle. Although this specification of error is not supported by argument in the appellant's brief, as it

was argued orally, we shall consider it at this time.

Mr. Galde testified that on the day of the accident he was cultivating the field just south of the county road and west of the intersection when he saw a black station wagon go by on the county road to his left as he was driving the tractor in an easterly direction; that when he first saw the station wagon it was about ⅛ of a mile from the intersection, and that he had it in view up to the crest of the hill, which he said was approximately 200 feet west of the intersection; that he saw the station wagon pass over the hill and that a little later he saw smoke or steam coming out of a ditch; and that when he got closer he saw that the station wagon and Mr. Thompson's vehicle had collided. He further testified that he had driven an automobile for forty years and that he was able to estimate the speed of the Gleson vehicle while it was in his view; but when he was asked to give that estimate of speed, an objection was made which was sustained by the trial court.

Our most recent decision on this subject is Miller v. Larson, 95 N.W.2d 569 (N.D. 1959). In that case this court cited with approval the rule applied in Nebraska:

"The question of the admissibility of evidence as to the speed of a vehicle shortly prior to the time of an accident rests largely in the discretion of the court."

Miller v. Larson, supra, 572, quoting Shields v. County of Buffalo, 161 Neb. 34, 71 N.W.2d 701, 704–705.

In *Miller* the plaintiff made the following offer of proof:

Now comes the plaintiff and offers to prove by the witness, Olsberg, that on the day of the accident and the few seconds immediately preceding the accident that he was driving his Knerr Dairy truck in an easterly direction on U.S. Highway 10 at a point about two miles short of and west of the scene of the ac-

cident herein; that he was traveling at a speed between 45 and 50 miles per hour; that for about two miles previous thereto he had seen the Lincoln automobile of the plaintiff creeping up behind him; that eventually and at the point of approximately two miles west of the accident that the Lincoln automobile passed him; that at the time the Lincoln automobile of the plaintiff was going at a normal speed within the speed law, and that he noticed nothing whatever unusual about his driving or his passing; that in front of him was a Hart Express truck, and that about a mile later at a point about one mile from the scene of the accident he saw the plaintiff's Lincoln pass said Hart Motor Express; that in the interval he had noticed no pickup or change in speed of the Lincoln automobile and that it appeared to him that his passing of the Hart Motor Express was perfectly normal and within all of the legal rules of the road; that he shortly thereafter came upon the scene of the accident and got out of his own truck; that his arrival at the scene of the accident was momentarily as one of the parties had not been removed from the car and the defendant Larson was still on his hands and knees in the ditch.

Miller v. Larson, supra, 570–571.

In sustaining the trial court in its exclusion of testimony on the part of the truck driver concerning the speed of the Lincoln automobile, the court said:

In an action for damages growing out of a collision of motor vehicles the admission in evidence of testimony as to the speed of one of them at a point between one and two miles from the scene of the accident is a matter of discretion on the part of the trial court where it appears that the witness did not observe the vehicle in question as it traveled the last mile immediately preceding the accident and there is no other evidence of speed within that distance.

Miller v. Larson, supra, Syllabus 2.

Comparing *Miller* to this case, we find that the truck driver in *Miller* had a much longer time to observe the speed of the vehicle concerning which he had an opinion than did the farmer, Mr. Galde, in this case, but that the distance from the place where the vehicle was observed to the point of the accident was much less in this case than in *Miller.*

 Having adopted the rule that the admission of this evidence rests largely in the discretion of the trial court, we would not set aside the trial court's decision unless we were convinced that it had abused its discretion. Reviewing the evidence in this case in light of *Miller,* we are not convinced that the trial court abused its discretion. We therefore find no error in its exclusion of the testimony in regard to the speed of the Gleson vehicle.

Having so concluded, we find no error in the fact that the trial court in excluding the testimony relative to the speed of the Gleson vehicle cited legal authority in support of his ruling in the presence of the jury.

Furthermore, as no objection was made when the comment was made by the judge, and no request was made for a curative instruction to the jury concerning the comment, the appellant has waived any right to urge this comment as error on appeal. Froemke v. Hauff, 147 N.W.2d 390, 398 (N.D.1966).

Other specifications of error were asserted in the motion for judgment notwithstanding the verdict or in the alternative for a new trial, as well as in the original specifications of error and amended specifications of error on appeal, but as those have not been argued in the appellant's brief, they are deemed abandoned. State v. Loyland, 149 N.W.2d 713 (N.D. 1967); Froemke v. Hauff, 147 N.W.2d 390 (N.D.1966); Regent Coop. Equity Exch. v. Johnston's Fuel Liners, 122 N.W.2d 151 (N.D.1963).

For reasons stated in the opinion, the order denying the motion for judgment notwithstanding the verdict or in the alternative for a new trial and the judgment are affirmed.

TEIGEN, C. J., and STRUTZ, PAULSON and KNUDSON, JJ., concur.