Dennis SCHALESKY, Plaintiff and
Respondent,

v.

SOO LINE RAILROAD, a corporation,
Defendant and Appellant.

Civ. No. 8639.

Supreme Court of North Dakota.

Sept. 23, 1970.

Palda, Palda, Peterson, Anderson & Tossett, Minot, for defendant and appellant.

Pringle & Herigstad, and Edward Bosch, Minot, for plaintiff and respondent.

PAULSON, Judge.

This is an action for property damage sustained by the plaintiff, Dennis Schalesky, in a collision between a tractor and trailer unit owned and operated by Mr. Schalesky and a freight train owned by the Soo Line Railroad, a foreign corporation licensed to do business in the State of North Dakota, and operated by employees thereof.

The jury returned a verdict in favor of Mr. Schalesky and against the defendant, Soo Line Railroad, in the sum of $26,770.-38 and, by special findings, found that $21,782.38 of that figure was awarded for damages to Mr. Schalesky's tractor and trailer unit, and $4,898.00 was awarded to Mr. Schalesky for the loss of use thereof. After the entry of judgment, the Soo Line Railroad moved for a judgment notwithstanding the verdict or in the alternative for a new trial. The trial court denied both phases of the motion and the Soo Line Railroad has appealed from the verdict and judgment, from the order of the trial court in overruling the Soo Line Railroad's motion for judgment notwithstanding the verdict or in the alternative for a new trial and from the whole thereof.

Mr. Schalesky was engaged in the business of transporting grain by tractor and trailer, making an average of three round trips a week from Burlington, North Da-

kota, to the Duluth, Minnesota-Superior, Wisconsin area. Mr. Schalesky, with his wife and children, resided in Burlington, North Dakota, which is located five miles northwest of Minot, North Dakota, on U. S. Highways 2 and 52 which are merged through the city of Burlington. It was necessary for Mr. Schalesky to enter Burlington on U.S. Highway 2 and 52 and then turn east on Ward County Highway 10 in order to reach his home, and, in so doing, to cross the Soo Line Railroad tracks on Ward County Highway 10, since his home was located about one and one-half blocks east of the tracks. There are approximately from 50 to 75 homes located east of the Soo Line Railroad tracks in the neighborhood of Mr. Schalesky's home in the Burlington area. During the months from January to May of 1969, the only access road available to reach the homes in this area was Ward County Highway 10.

The Soo Line Railroad acknowledges that it was its responsibility to keep its crossings in the Burlington area free of ice and snow. Notwithstanding this fact, on March 13, 1969, the date of the accident, the Soo Line Railroad had not cleared the ruts of ice from its mainline tracks at the crossing where Ward County Highway 10 traverses the Soo Line Railroad tracks. About 12:05 a.m. on March 13, 1969, Mr. Schalesky was returning from Superior, Wisconsin, to his home. Although a light snow had fallen during the previous day in Burlington, at the time of the accident the weather was clear and the roads were in good condition. Mr. Schalesky drove north on U.S. Highway 2 and 52 and then turned east on Ward County Highway 10 in Burlington, enroute to his home. In crossing the mainline tracks of the Soo Line Railroad, the front wheels of his tractor became stuck in the ruts of ice along the most easterly rail of the mainline tracks. These ruts in the mainline tracks had existed for a considerable number of days, and possibly for weeks, before the accident and no attempt had been made by the Soo Line Railroad to remove them, although other area residents testified at the

trial that their vehicles had become stuck at this crossing in the weeks prior to the accident. Mr. Schalesky stated, however, that he had used this crossing approximately six times a week in the months prior to the accident and had never become stuck. Ward County Highway 10 is on a slightly downhill slope as it proceeds east from U.S. Highway 2 and 52, and the Soo Line Railroad crossing is approximately 150 feet east of where Ward County Highway 10 intersects U.S. Highway 2 and 52. Mr. Schalesky testified that, on the day of the accident, he was traveling at a speed of approximately four to five miles an hour at the time when he attempted to cross the Soo line tracks and that his front wheels dropped into the ruts along the most easterly rail of the mainline tracks and his vehicle became stuck. Mr. Schalesky's tractor had eight drive wheels which were equipped with new tires. However, his trailer was not loaded and this fact made his traction somewhat less efficient than it would have been if his trailer had been loaded with cargo. Mr. Schalesky had all of his vehicle signal lights switched on at the time. There were seven or eight lights showing on the trailer and on the tractor cab that were visible to the train crew as the train came around the curve from the north. This curve in the railroad line is located approximately one-quarter of a mile north of the railroad crossing where the accident occurred.

When Mr. Schalesky became stuck at approximately 12:05 a.m., he attempted to rock his tractor back and forth for several minutes in an effort to free it. Seeing that this was futile, he ran to his home, informed his wife of his predicament, and requested that she telephone the Soo Line Railroad in Minot and inform the railroad officials of the fact that his tractor and trailer unit was stuck on the Soo Line Railroad tracks in the Burlington area. He also asked his wife, who had not yet retired for the night and who had been awaiting his arrival home, to awaken his two oldest sons and have them hurry to his assistance and help to free his tractor from

the ice ruts on the tracks. Mr. Schalesky then returned immediately by automobile to the crossing and began working with a shovel to free his tractor. His two oldest sons arrived at the crossing several minutes later and began to help him in his efforts to free his vehicle. The plaintiff's wife, Mrs. Schalesky, placed telephone calls to all four of the telephone numbers listed in the Minot-Burlington telephone book for the Soo Line Railroad, but she did not receive an answer from any of the numbers called. She then telephoned the Minot Police Department and was informed by Minot police that they would attempt to contact the Soo Line Railroad officials and advise them that her husband's tractor was stuck on the crossing in Burlington.

Approximately ten minutes after Mr. Schalesky and his two sons had begun shoveling and working to free the tractor, they heard a train signal whistle as the train rounded the curve located approximately one-quarter of a mile north of the crossing. Because of this curve, neither the engineer nor the brakeman in the engine cab of the train could see the crossing at Ward County Highway 10 until completing the sweeping curve, one-half mile in length, and which is located one-quarter of a mile from the crossing. At approximately the same time as engineer and his crew observed Mr. Schalesky's tractor on the railroad tracks, they received from a railroad dispatcher the radio message that informed them of the fact that a vehicle was stuck on the tracks at Burlington.

The train which struck Mr. Schalesky's vehicle was a freight train consisting of 75 cars and weighing 5,600 tons, which had originated at Portal, North Dakota, and which train, traveling at an approximate speed of from 45 to 50 miles an hour, was running behind schedule, enroute to Harvey, North Dakota. The train was equipped with air brakes on all 75 cars. Upon sighting Mr. Schalesky's vehicle on the tracks, the engineer immediately applied all of the train's brakes for a full emergency stop. The engineer testified that the train was traveling at a speed of 43 miles an hour when it collided with Mr. Schalesky's tractor and trailer unit. The train struck the Schalesky vehicle and traveled an additional one-half mile before coming to a complete halt. Thus, the train traveled a distance of three-quarters of a mile with all of its brakes set on full emergency before it came to a stop.

On appeal, the Soo Line Railroad concedes negligence on its part and appeals on the sole issue of whether Mr. Schalesky was contributorily negligent and whether such contributory negligence was instrumental in causing the accident, which is the subject of this litigation, and the damages resulting therefrom.

In conceding that it was negligent in not properly maintaining the crossing where the accident occurred, the Soo Line Railroad alleges that Mr. Schalesky was contributorily responsible for the accident because he failed to set out flares along the railroad tracks to warn the crews of any Soo Line Railroad trains which might be traveling through Burlington of the obstruction on its railroad tracks. As authority for such argument, the Soo Line Railroad relies exclusively on the decisions in the cases of Northern Pacific Ry. Co. v. Tracy, 191 F. 15 (8th Cir. 1911), and Cain v. Northern Pac. Ry. Co., 28 N.D. 471, 149 N.W. 678 (1914). Both of these cases arose from the same set of facts. The plaintiff first brought suit in the United States District Court in North Dakota where a judgment was rendered in his favor. An appeal was then taken to the United States Circuit Court of Appeals, where the judgment was reversed upon the basis that the plaintiff's employees were negligent, and a new trial was ordered. However, the plaintiff, instead of commencing a new trial in the United States District Court, dismissed the action and brought suit in a North Dakota district court, which resulted in a verdict for the plaintiff. On appeal, this Court reversed the trial court with directions to enter a judgment notwithstanding the verdict.

In the *Northern Pacific Railway* cases, *supra,* the plaintiff's employees were attempting, during daylight hours and during clear weather, to move a traction engine across the defendant's railroad tracks which were then under repair. While in the process of attempting to cross the tracks, the plaintiff's traction engine became stuck because of the fact that the railroad had removed the crossing planks in the course of its repair work. As the plaintiff's employees were making their unsuccessful attempts to free the traction engine from its predicament, they observed smoke at a distance of five miles to the east from an approaching train. Notwithstanding this fact, none of the employees made any effort to proceed eastward along the track toward the oncoming train in an attempt to give warning and flag the train down before it reached the obstructed crossing. As a consequence of this inaction on the part of the plaintiff's employees, the train collided with the traction engine. Thus, this Court held in Cain v. Northern Pac. Ry. Co., *supra,* that the persons in charge of the traction engine were guilty of contributory negligence and, therefore, that the plaintiff was barred from any recovery.

The case at bar is factually distinguishable from the above-cited *Northern Pacific Railway Company* cases. First, this accident occurred at night and Mr. Schalesky was not aware of any train approaching; nor, because of the curve, would he have been able to observe an approaching train from a sufficient distance to enable him to give timely warning to the train crew of an approaching train. Secondly, Mr. Schalesky could not predict the direction from which a train might be approaching. Thirdly, since the accident occurred during the winter months, as a matter of personal safety and practicality it is uncertain whether it would have been reasonable to have run along the railroad tracks, which were bordered with deep snow, displaying a highway flare or some other immediately available warning device. Fourthly, it has not been established that the train crew would have applied the train's emergency brakes at that time of night, in an isolated area, at a distance of more than three-quarters of a mile from Burlington, simply because someone was signaling with a highway flare, a flashlight, or some other warning device. It would have been necessary for Mr. Schalesky to have signaled from a distance of at least three-quarters of a mile in either direction from the Burlington crossing, in order to have provided an effective warning, since the train, even with full emergency braking applied, required a distance of three-quarters of a mile in which to come to a stop. Fifthly, consistent with the existing circumstances, Mr. Schalesky took the most reasonable and practical course of action: he instructed his wife to reach the Soo Line Railroad officials by dialing each of the four telephone numbers listed for the Soo Line Railroad in the Minot-Burlington telephone directory, and, when this plan of action failed to establish contact with any of the railroad's personnel, Mrs. Schalesky telephoned the Minot Police Department. The Minot police assured her that they would attempt to alert the Soo Line Railroad officials. This last effort to warn the train crew apparently proved successful, since the testimony revealed that a dispatcher, by radio, warned the train engineer of the obstructed crossing. The warning came too late for the train crew to stop the train before it reached the Burlington crossing, because the radio warning was received at approximately the same time as the engineer sighted Mr. Schalesky's tractor obstructing the Soo Line Railroad tracks.

■ The Soo Line Railroad contends that Mr. Schalesky's acts constituted contributory negligence as a matter of law. In paragraph 1 of the syllabus, in Willard v. Owens, 164 N.W.2d 910, 911 (N.D. 1969), we held:

"Questions of negligence, contributory negligence, and proximate cause ordinarily are questions for the jury. It is only when the record is such that reasonable

men can draw but one conclusion therefrom that such questions become questions of law."

Furthermore, earlier opinions of this Court are in accord with the decision in Willard v. Owens, *supra*. Koland v. Johnson, 163 N.W.2d 330 (N.D.1968); Linington v. McLean County, 161 N.W.2d 487 (N.D.1968); Gleson v. Thompson, 154 N.W.2d 780 (N.D.1967).

As we said in Williams v. Minneapolis, St. P. & S. S. M. Ry. Co., 57 N.D. 279, 221 N.W. 42, 43 (1928):

"Railroads cannot, because they have the right of way, disregard reasonable precautions for the safety of the public. They cannot say that the public shall cross their tracks at its peril."

█ In the case at bar, it is our opinion that the question of contributory negligence was a question of fact and was properly determined by the jury.

The order denying the motion for judgment notwithstanding the verdict or for a new trial, and judgment, are affirmed.

TEIGEN, C. J., and STRUTZ, KNUDSON, and ERICKSTAD, JJ., concur.